## UNITED STATES DISTRICT COURT    EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:12-CR-70(1) |
| | § | |
| STACEY MARIE BARRON | § | |

### MEMORANDUM AND ORDER

Pending before the court is Defendant Stacey Marie Barron's ("Barron") *pro se* Motion for Compassionate Release (#69) pursuant to 18 U.S.C. § 3582(c)(1)(A). The Government filed a response in opposition (#77). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny Barron's motion. Having considered the pending motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that Barron's Motion for Compassionate Release (#69) should be denied.

I.    <u>Background</u>

On June 6, 2012, a federal grand jury in the Eastern District of Texas returned a four-count Indictment (#2), charging Barron in Count One with Conspiracy to Produce Child Pornography, in violation of 18 U.S.C. § 2251(e); in Counts Two and Three with Production of Child Pornography, in violation of 18 U.S.C. § 2251(a); and in Count Four with Distribution of Materials Involving the Sexual Exploitation of Minors, in violation of 18 U.S.C. §§ 2252(a)(2) 2252(b)(1). On August 24, 2012, Barron pleaded guilty to the offense charged in Count One of the Indictment. On August 12, 2013, the court sentenced Barron to a term of 276 months' imprisonment, to be followed by 15 years of supervised release. Barron is currently housed at

Federal Medical Center Carswell ("FMC Carswell"), located in Fort Worth, Texas.  Barron's projected release date is January 12, 2032.

II.    Analysis

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) embodies a rare exception to a conviction's finality.  This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment.  The First Step Act of 2018 ("the Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a)[1] to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission"). *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024), *abrogated on other grounds by United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). Although the Commission had issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf. *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* U.S.S.G. § 1B1.13. Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." *Id*. § 1B1.13(b). These categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id*. § 1B1.13(b)(1)-(6). The Fifth Circuit has clarified, however, that "prisoners have extraordinary and compelling reasons for relief 'only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner.'" *Austin*, 125 F.4th at 692 (quoting *Escajeda*, 58 F.4th at 186).

As a result, a prisoner seeking compassionate release on her own motion must satisfy the following hurdles**:**

(1)    the defendant must have exhausted her administrative remedies;

(2)    "extraordinary and compelling reasons" must justify the reduction of her sentence or she must satisfy the requirements of § 3582(c)(1)(A)(ii);

(3)    the reduction must be consistent with the Commission's applicable policy statements; and

(4)    the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors.

*See Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022); *see Austin*, 125 F.4th at 692.

4

A.     Exhaustion of Administrative Remedies

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional, but that it *is* mandatory").  Accordingly, before seeking relief from the court, a defendant must first submit a request to the warden of her facility to move for compassionate release on her behalf and either exhaust her administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Although this requirement is said to be mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule." *Franco*, 973 F.3d at 468.  "Mandatory but nonjurisdictional procedural filing requirements may be waived." *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022).  Therefore, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived. *Id*.

Here, Barron claims to have exhausted her administrative remedies. Barron maintains that she submitted a request for compassionate release to the warden of the facility where she is housed. Additionally, Barron avers that 30 days have lapsed since the filing of her request without a response from the warden. Consequently, Barron has seemingly satisfied the statutory requirements for exhaustion, as she claims to have filed her motion for compassionate release after the 30-day waiting period. *See Garrett*, 15 F.4th at 338 ("[A] prisoner may wait 30 days after filing his request and—whether the BOP has ruled on the request or not—he is free to file a motion in the district court."). Additionally, even if there is some question as to proper exhaustion, the Government does not invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief and, thus, has waived any nonjurisdictional, procedural filing requirement.[2] *See McLean*, 2022 WL 44618, at *1 (holding that it is an abuse of discretion for the district court to deny a motion for compassionate release based on a purported failure to comply with § 3582(c)(1)(A)'s exhaustion requirement when the Government did not raise exhaustion). Nevertheless, despite Barron's apparent compliance with the exhaustion requirement, nothing in her motion indicates that extraordinary and compelling reasons exist to release her from custody or modify her term of imprisonment.

### B.    Extraordinary and Compelling Circumstances

Barron's motion seems to advance only one purportedly extraordinary circumstance in support of her motion for compassionate release. Namely, Barron maintains that her sentence is unusually long in light of certain changed circumstances. Barron claims that her sentence is

---

[2] Probation notes that the records it received from the BOP indicate that Barron did not exhaust her administrative remedies. Because the Government failed to raise the issue, however, any contention pertaining to the non-exhaustion of remedies is waived.

unusually long because it is three years longer than her co-defendant Charles Reese ("Reese") received, whom she maintains initiated the conduct underlying Barron's conviction.[3] Furthermore, Barron contends that her sentence is unusually long due to the changed circumstances resulting from her rehabilitative efforts.

               1.      <u>Unusually Long Sentence</u>

Section 1B1.13(b)(6) provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

In order to meet the requirements of the Unusually Long Sentences provision of U.S.S.G. § 1B1.13(b)(6), a defendant must satisfy three requirements. First, the defendant must be serving an unusually long sentence. U.S.S.G. § 1B1.13(b)(6). Second, the defendant must have served at least 10 years of her term of imprisonment. *Id.* Third, there must have been a change in the law that produces a gross disparity between the sentence being served and the sentence likely to be imposed at the time of the filing of the motion. *Id.*

Regarding the first requirement, the sentence Barron received, 276 months, is not unusually long under the circumstances. As Probation notes, Barron received a sentence below the Guidelines range, which was 292 to 360 months' imprisonment. In an addendum, Probation

---

[3] Reese is not listed as a co-defendant in Barron's case, although he was a primary participant in the conduct underlying Barron's conviction.

highlights that Barron's reduced sentence resulted from her decision to enter a binding plea agreement. Specifically, Probation states:

> Absent the binding Plea Agreement, Barron would have received two additional specific offense characteristic adjustments on Count 1, which would have yielded an adjusted offense level of 50, and with a three-level reduction for acceptance of responsibility, a total offense level of 47. However, the highest range on the sentencing table is 43, so it would have been adjusted to 43. This would mean she would have faced a guideline range of Life, but because the statutory maximum sentence on Count 1 is 30 years, her range would have been reduced to 360 months imprisonment. By entering into the binding Plea Agreement, she avoided a sentence of 360 months on Count 1 alone.

Furthermore, even if Barron's sentence could potentially be viewed as unusually long, the sentence is justified as it was imposed after she took and sold photographs and videos of herself and her nude minor children, a daughter under the age of six and a son under the age of two, engaging in sexually explicit acts. Specifically, Barron forced her minor daughter to participate in web-cam sessions where she would simulate performing oral sex and digitally penetrating her. Barron also made her daughter watch as she performed oral sex on her boyfriend's dog. In addition to watching, Barron made her daughter simulate performing oral sex on the dog. Barron also took photographs and videos of herself performing oral sex on her 18-24 month old son, which she sold in exchange for money. Therefore, the sentence reflects the egregious nature of the offense conduct and cannot be said to be "unusually long" in this situation.

Additionally, though Barron has satisfied the second requirement by having served at least 10 years of her sentence, she has failed to identify any change in the law that fulfills § 1B1.13(b)(6)'s third requirement. Section 1B1.13(b)(6) states that there must have been a change in the law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* This section explicitly excludes

the consideration of non-retroactive changes "to the Guidelines Manual." *Id.* Here, Barron does not identify a change in the law that would produce a different sentence today than the one she received on August 12, 2013. Rather, Barron states broadly that "the circumstances surrounding [her] offense, combined with her unusually long sentence as well as her rehabilitative efforts constitute extraordinary and compelling reasons for a sentence reduction." Nonetheless, Probation notes that the same or a longer sentence would likely be imposed if Barron were "being sentenced [today] in accordance with the current 2024 Guidelines Manual." Consequently, Barron has failed to establish that the length of her sentence poses an extraordinary and compelling circumstance warranting compassionate release.

2.    Rehabilitation

To the extent that Barron advances her alleged rehabilitation as an independent ground for release, the court finds it equally unpersuasive. Barron maintains that her post-sentence rehabilitation, evidenced by the courses she has taken and the programs she has completed establishes extraordinary and compelling reasons for compassionate release. Regarding rehabilitation of the defendant, the Sentencing Guidelines recognize:

> Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

U.S.S.G. § 1B1.13(d); *accord United States v. Martinez*, No. 23-50418, 2024 WL 658952, at *1 (5th Cir. Feb. 16, 2024) ("Even if [the defendant] were reformed, his rehabilitation efforts alone are not an extraordinary and compelling reason for release."); *United States v. Handlon*, No.

23-50386, 2024 WL 111787, at *1 (5th Cir. Jan. 10, 2024) (holding that the defendant's "rehabilitation efforts alone are not an extraordinary and compelling reason for his release").

Hence, while the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *accord United States v. Rios*, No. 24-673-CR, 2025 WL 841862, at *2 (2d Cir. Mar. 18, 2025); *United States v. Black*, 131 F.4th 542, 544 (7th Cir. 2025); *see United States v. Cordoba*, No. 24010599, 2025 WL 799354, at *1 (5th Cir. Mar. 13, 2025); *Shkambi*, 993 F.3d at 392; *United States v. Hudec*, No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."). In fact, "[m]aking good use of one's time in prison is not uncommon, and indeed is expected." *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *United States v. Alvarez*, No. 89-CR-229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)); *accord United States v. Alimehmeti*, No. 16-CR-398 (PAE), 2024 WL 4880197, at *8 (S.D.N.Y. Nov. 25, 2024). Further, " making good use of one's time in prison and regretting one's actions are not grounds for sentence reductions under the First Step Act." *United States v. Polnitz*, No. 17-cr-201-pp, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020). Therefore, Barron's rehabilitative efforts do not provide an independent ground for concluding that there exists an extraordinary and compelling circumstance for her release from prison at this time.

C.    Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Chavez*, No. 23-50684, 2024 WL 940263, at *1 (5th Cir. Mar. 5, 2024); *Rollins*, 53 F.4th at 358-59; *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *Shkambi*, 993 F.3d at 392; *United States v. Thompson*, 984 F.3d 431, 435 n.11 (5th Cir. 2021) (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). Barron's offense of conviction stems from her participation in a conspiracy to produce child pornography. On September 12, 2011, images of suspected child pornography were uploaded to an online picture storage company called Photobucket.com ("Photobucket"). Photobucket reported the images to the Federal Bureau of Investigations ("FBI") and informed the FBI that the photographs had been uploaded by Stephanie Nelson ("Nelson"). An investigation by the FBI revealed a years long conspiracy to produce child pornography by Nelson, Barron, Reese, Johnnie Baldwin ("Baldwin"), and Kara Quebedeaux ("Quebedeaux").

The conspiracy originated with Nelson. As early as 2004, Nelson began sending sexually explicit photographs to Reese in exchange for payment. Over the years, the scheme evolved, and Nelson began sending photographs and videos of her engaging in sexually explicit conduct with other women, including Barron and Quebedeaux, animals, and Nelson's own children. Barron became involved in the exchanges in 2006, when she was seventeen years old. In July 2009,

Reese began asking Barron for photographs of her six-year-old daughter. According to Barron's Presentence Investigation Report ("PSR"), Barron consulted Baldwin, her boyfriend at the time, about the proposition. Baldwin told Barron that her daughter was "too young to remember anything that would happen." Baldwin also stated that he did not want to be "dope sick," implying he and Barron could use the money they received in exchange for the photographs to purchase drugs. Barron took countless pictures and videos of her children engaged in various sexual acts during 2009, 2010, and 2011. She sold those photographs to Reese for thousands of dollars.

On March 2, 2012, a search warrant was executed at Reese's residence in Covington, Louisiana. A search of Reese's email disclosed at least six images of Barron and her minor daughter engaged in sexually explicit conduct. Additionally, a search of Reese's phone revealed that Barron had sent approximately twenty sexually explicit photographs of her daughter via text message. A forensic review of Barron's phone uncovered multiple images of her performing oral sex on her minor son. It was ultimately determined that Barron had engaged in at least ten webcam sessions with her minor children. Barron pleaded guilty to conspiring to produce child pornography on August 24, 2012.

In addition to the nature and circumstances of Barron's offense of conviction, it is not her only conviction of record. On March 31, 2010, Barron was arrested and charged with theft for stealing six video games from a Kohl's department store. Barron was ultimately convicted of that offense on October 20, 2010. A few months later, on October 15, 2010, Barron was arrested and charged with Abandoning/Endangering a Child. Barron's arrest arose from reports to local law enforcement that an intoxicated couple at a local supermarket were seen stumbling around the

parking lot with a nude child.  Once law enforcement arrived, Barron admitted to using injectable drugs and driving the child around while under the influence of said drugs.  Used syringes, including one containing blood, were found in the vehicle.  Barron was convicted of abandoning/endangering a child on February 7, 2011, and was on probation for that offense when she was arrested in the case at bar.

Furthermore, Barron has a long history of poly-substance abuse.  Regarding Barron's history of drug abuse, courts are precluded from "lengthening a prison term in order to promote a criminal defendant's rehabilitation," but in the present case, the court is deciding whether to reduce, not extend, a sentence. *Tapia v. United States*, 564 U.S. 319, 321 (2011); *see Chambliss*, 948 F.3d at 694.  Here, Barron has a long history of abusing alcohol, marijuana, ecstasy, crack cocaine, powder cocaine, methamphetamine, prescription opiates, Soma, and Xanax.  Therefore, the court is of the opinion that releasing Barron at this time could facilitate her continued drug abuse, as she would gain unfettered access to over-the-counter medications and illegal drugs outside the BOP.

Where, as here, a prisoner has engaged in "severe" criminal conduct and has a criminal history, the district court has discretion to deny compassionate release. *Chambliss*, 948 F.3d at 693-94; *accord Rollins*, 53 F.4th at 358-60; *United States v. Gharib*, No. 21-40779, 2022 WL 1565352, at *1 (5th Cir. May 18, 2022) (refusing to consider the defendant's contention that extraordinary and compelling reasons justified compassionate release due to the defendant's no longer being subject to the career offender enhancement when the district court found that the § 3553(a) factors outweighed granting relief); *Keys*, 846 F. App'x at 276 (rejecting the defendant's argument that the court gave too much weight to his criminal history and finding that "a mere

disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal").  In view of the nature and circumstances of her offense of conviction, Barron's criminal history, and her history of substance abuse, the court cannot conclude that Barron's early release from prison would afford adequate deterrence or protect the public.

On balance, compassionate release is not warranted in light of the applicable factors set forth in § 3553(a).  Like the court in *United States v. Lewis*, this court concludes that "Defendant's current term of imprisonment was and remains appropriate."  No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021).  Barron committed a serious offense that justified her sentence, and the circumstances she now identifies do not render that sentence unjust or inequitable.  *See id.*  In addition, Barron has not demonstrated that a change in the law would result in her receiving a lesser sentence today in 2025 than she received in 2013.

III.    Conclusion

In sum, Barron has failed to satisfy her burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  The 276-month sentence of imprisonment imposed upon Barron for her offense comports with the 18 U.S.C. § 3553(a) factors, and she has adduced no extraordinary and compelling reasons to lessen her sentence or release her from prison at this time.  Neither the length of her incarceration nor her rehabilitation merits a reduction of sentence under these circumstances.  Accordingly, Barron's *pro se* Motion for Compassionate Release (#69) is DENIED.

14

SIGNED at Beaumont, Texas, this 24th day of April, 2025.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE